CHARLES F. STEARNS, *Attorney General, et al., vs.* THE NEWPORT HOSPITAL.

NEWPORT—JUNE 29, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)  *Newport Hospital.  Equity Pleading.  Charitable Trusts.*

The mayor of the city of Newport is not, either in his official capacity or as *ex-officio* trustee or individually as a taxpayer of the city for himself and other taxpayers, properly joined as party complainant with the attorney-general in a bill of complaint against a hospital corporation created by the General Assembly and located in the city of Newport seeking an accounting of the dealings of the respondent corporation with a trust estate devised to it for the benefit of the poor, and the appointment of new trustees.

(2)  *Corporations.  Charitable Trusts.*

A corporation may generally execute a trust not expressly forbidden by its charter, if the purposes of the trust are germane to the objects stated in the act of incorporation.

The Newport Hospital, a corporation created by act of the General Assembly for the purpose of maintaining a hospital to receive, care for, and heal the sick or hurt, by accident or otherwise, was competent to receive as trustee a devise of trust property to be used for the purpose of receiving, healing, and taking care of sick, hurt, injured, or infirm poor persons, and to administer such trusts.

(3)  *Duty of Municipality to Provide for Care of Contagious Diseases.*

A municipality is not relieved of the duty imposed by Gen. Laws cap. 40, § 13, and cap. 94, §§ 15, 16, 17, relating to the care of contagious diseases, by the fact that a local hospital has like duties imposed upon it under a charitable trust, nor can the municipality transfer such duty so imposed upon it upon the hospital or question the exercise of the discretion of the hospital in this regard.

(4)  *Charitable Trusts.  Right to Use Corpus of Fund.*

A provision in a charitable trust empowering the trustee to use "the whole residue and remainder of said trust property" as well as "the proceeds, rents, issues, profits, and income thereof" for the purposes of the trust, "to which end the employment of said trust funds and property for the general support and maintenance of said hospital is hereby authorized," is sufficient authority to the trustee to expend part of the capital if desirable.

BILL IN EQUITY on facts set forth in opinion. Heard on demurrer and answer.

DOUGLAS, C. J.  The defendant is a corporation established in the city of Newport under an act of the General Assembly

passed February 12, 1873, of which the first two sections are as follows:

"SECTION 1.    Benjamin Finch, T. Mumford Seabury, George C. Mason, Edward King, George A. Richmond, R. B. Cranston, Henry Ledyard, Samuel Engs, David King, Austin L. Sands, Henry E. Turner, William H. Birckhead, George S. Engs, and their associates who may be hereafter admitted members of the corporation hereinafter created according to the by-laws thereof, are incorporated and made a body corporate and politic by the name and style of the 'Newport Hospital,' for the purpose of establishing and maintaining a hospital in Newport for the purpose of receiving, caring for, and healing the sick or hurt by accident or otherwise, with the rights and privileges and subject to the duties and liabilities provided for corporations in general by the provisions of chapter 139 of the General Statutes.

"SEC. 2.    The said corporation may take and receive, hold, purchase and possess real and personal estate, to be used and improved for the erection, support and maintenance of said hospital in the city of Newport; provided that the income of its real and personal estate together does not in any one year exceed the sum of twenty thousand dollars; and the property and estate of said corporation, both real and personal, shall not at any time be liable to be assessed in the apportionment of any state or town tax."

An act was passed March 10, 1893, amending section 2 of this act so that it should read as follows:

"SECTION 2.    The said corporation may continue to hold all property heretofore given or conveyed to it and shall have power to take and hold all property which may hereafter be given or conveyed to it for the purpose of being invested for or in any way applied to the support and maintenance of said hospital or for the caring for and healing of sick, hurt, injured, or infirm persons in said Newport, and to take and execute all trusts in relation thereto, and to do all things appertaining to the receiving of property and estate and of applying the same to the support and maintenance of said hospital and to the care and healing of sick, hurt, injured, or infirm persons that a natural person could lawfully do.    And the property and

estate of said corporation, both real and personal, shall be exempt from taxation, provided that the income of its real and personal estate together does not in any one year exceed the sum of fifty thousand dollars."

In November, 1882, after the organization of the defendant corporation under its charter, but before the passage of the foregoing amendment, the will of John Alfred Hazard was admitted to probate in Newport, and by the terms of said will the residue of his estate was devised and bequeathed to the Newport Hospital, its successors and assigns, forever, in trust, as follows:

"1. To set apart and invest five thousand dollars, raising said sum by sale of my real estate if necessary, and pay and apply the income thereof to and for the use of Samuel C. Clinton (a man of color who has worked for me many years) as long as he shall live.

"2. To set apart and invest also, ten thousand dollars, raising said sum by selling my real estate, if needful, and pay the income thereof to Mrs. Rebecca Stanley (daughter of Captain John Wood, formerly of said Newport) for and during her natural life.

"3. To forever keep in good order the monuments, graves, ground and fences of the Easton Burial Lot on my farm at Sachuest Beach in Middletown in said State.

"4. To forever use and apply the whole residue and remainder of said Trust Property and the proceeds, rents, issues, profits and income thereof to and for the receiving, healing and taking care of sick, hurt, injured, or infirm poor persons at said Hospital, free of charge to such poor persons or patients as far as may be, and under and pursuant to such rules and regulations in the premises as the Trustees, Directors or Managers of said Hospital may from time to time in their discretion prescribe forever; the object hereof being to benefit as many such poor persons as practicable, and at the same time provide and secure a permanent source of aid, remedy and relief; to which end the employment of said trust funds and property for the general support and maintenance of said Hospital is hereby authorized so far as may be requisite to uphold it and preserve

it and perpetuate the charity hereby created and designed. Said Newport Hospital corporation and the trustees, managers or directors thereof shall always have power to sell and change the investment of said Trust Property and every portion and parcel thereof, whenever and as often as it may seem desirable to do so; and to perform every act requisite to effect such sales and changes, holding and investing the proceeds of every such sale upon and in conformity to the trusts herein declared of and concerning said Trust Property, and with continuous power to sell and change investments as aforesaid.

"But I particularly desire and recommend that no part of my said farm in Middletown shall ever be sold, or in any way aliened or disposed of, except by lease or leases for a term of not more than ten years each from time to time as may seem proper.

"In case said Newport Hospital shall refuse to accept said trusts or if ever from any cause it cannot be trustee or act or continue to act as trustee hereof, or cannot be compelled to execute said trusts, then it is my will and expectation that new and competent trustees shall be substituted and appointed to take and hold said trust property and perform said trusts, and that the requisite and appropriate proceedings and conveyances shall be ordered in the premises by the Supreme Court of said state or other proper court having equity jurisdiction in such matters."

This bill is brought against the Newport Hospital by the attorney-general, representing the public as beneficiary under the charitable trust created by the will of John Alfred Hazard; and by Patrick J. Boyle, in his capacity as mayor of the city of Newport, acting under the direction of a resolution of the city council of said city which instructs him, in his name as a trustee *ex officio* of the Newport Hospital, or in the name of the city, to institute proceedings, and also as a taxpayer of the city of Newport for himself and such other taxpayers as may join therein.

The bill recites the charter of the defendant and the trust provisions of the will aforesaid, and alleges that at the time of the probate of the will the Newport Hospital could not

legally take such a devise and bequest that the hospital illegally took possession of the property, becoming a trustee in its own wrong, and has ever since remained in the wrongful possession thereof; that while thus in wrongful possession, the respondent has violated the terms of the trust in that it has expended a portion of the principal of the trust estate; that it has further violated its trust by borrowing money upon the security of the principal of the trust estate, quoting as the foundation of this charge the last account of the treasurer of the hospital and a statement in a recent report of the trustees, to the effect that they had anticipated the further sale of land belonging to the corpus of the trust estate by incurring a debt; that by this use of the principal of the estate, it has so diminished the income thereof that it has closed a ward which it formerly conducted for the treatment of contagious diseases, and has refused to open said ward, although requested so to do by the board of health of the city of Newport, alleging a lack of funds available for this purpose; that the city council, relying on the provisions of the Hazard Trust to secure treatment of indigent persons suffering from contagious diseases, have made no other provision therefor, and that there is therefore no means of caring for such persons; that the continued expenditure of the principal of the trust estate and the assumption of obligations in anticipation of the sale of land which is a part of the corpus of the trust estate will ultimately result in its extinction; that the hospital has received from taxpayers of the city of Newport moneys amounting to upwards of $100,000 for the endowment of free beds for the use of poor persons suffering both from contagious and non-contagious diseases, and that these funds have been so negligently invested that there are now no free beds for contagious cases.

The relief asked for is an accounting of the dealings of the respondent with the trust estate, an injunction against the expenditure of any more of the principal of the trust estate, a schedule of the balance and securities held by it for the benefit of the trust, and a list of all notes, mortgages, and other obligations incurred by the respondent and chargeable to the trust

estate, and finally, the appointment of new and competent trustees under the will of John Alfred Hazard.

The respondent has filed a demurrer to the bill, on the ground that Patrick J. Boyle in his several capacities is not a proper party to this suit, and has also answered denying certain allegations of fact and claiming certain defences in law.

The questions of law raised are:

(1)    Is Patrick J. Boyle in his capacity as mayor of the city of Newport, and *ex officio* trustee of the Newport Hospital, or individually as a taxpayer of the city, for himself and other taxpayers, a proper party complainant to this bill?

(2)    Was the respondent, the Newport Hospital, at the time of the probate of the will of John Alfred Hazard, in November, 1882, competent to take the residue of the estate of said John Alfred Hazard under said will and to administer the trusts thereof, and is it now competent so to do?

(3)    Is the respondent, as trustee under the will of John Alfred Hazard, under obligation to open and maintain a ward of its hospital for the treatment of poor persons suffering from contagious diseases, and can the city of Newport, by reason of the existence of said trust, transfer to the respondent the duty which rests upon it as a municipality to care for poor persons suffering from contagious diseases?

(4)    Are the allegations as to the use by the respondent of moneys given to it for the endowment of free beds relevant to any issue raised in the cause or to the relief asked for by the bill?

(5)    Have the acts of the trustees of the respondent, as alleged in the bill, created the resulting contingency, under the will of John Alfred Hazard, calling for the appointment of new and competent trustees?

Several of these questions are based partly upon new matter introduced by the answer, and can not strictly be considered as upon demurrer. They have, however, been argued before us, and may be considered as if they had been raised by exceptions to these parts of the answer.

The first question must be decided in the negative.

(1)    The complainant's counsel argues that a municipal corpora-

tion being charged with the duty of caring for the poor is competent to hold in trust funds given to it for that purpose, citing *Lawrence Cy.* v. *Leonard*, 83 Penn. St. 206; *In re Robinson*, 63 Cal. 622; *Webb* v. *Neal*, 5 Allen, 575; *Philadelphia* v. *Elliot*, 3 Rawle, 170.

The law is undoubtedly so in this country (2 Dillon Munic. Corp. § 567), but the citation of authorities is quite unnecessary in this case, as our statute provides that: "Towns may take, purchase and hold real and personal estate, and alienate and convey the same; and may also take, hold and manage the same in trust for any charitable other than religious uses." Gen. Laws cap. 36, § 2. But this capacity to become trustee upon appointment gives the city no supervisory jurisdiction over funds entrusted to other trustees, though such funds may be so administered as to help or hinder the performance of the duties of the municipality. The Newport Hospital is not accountable for its administration of the Hazard trust to the city of Newport, and the mayor, as one of the trustees of the hospital, should exercise his own judgment in the performance of his duties upon the board, without dictation from any other branch of the city government.

It is not argued that his appearance in either of his other capacities can be sustained. It is a novel situation for a trustee of a public charity to appear in this court as complainant against himself and his co-trustees, alleging that they have abused their trust and ought to be removed. As a citizen and taxpayer he has no standing in this cause. The trust was not intended to benefit him by diminishing his private charities or public burdens. Incidentally it may have that result, but the intention of the founder was to increase the comfort of the poor and sick, not to substitute his aid for the benefits which they could already claim under the law. There is no limitation in the declaration of trust to the benefit of poor people who have a settlement in the city of Newport and are entitled to the care of the city. The bounty of the testator may be extended to aliens and sojourners as well as to citizens, if the trustees of the hospital choose to receive such "sick, hurt, injured or infirm poor persons," into their institution, and the expense of

the care of such persons may exhaust the whole revenue of the trust. The trust is a public one, and the attorney-general is the proper person to represent the public in any judicial inquiry into the conduct of the trustee in administering it. Tudor on Charities, 3d ed. 323. In *Burbank* v. *Burbank*, 152 Mass. 254, the court say: "This duty of maintaining the rights of the public is vested in the Commonwealth, and it is exercised here, as in England, by the attorney-general." To the same effect are *Green* v. *Blackwell*, 35 Atl. Rep. 375; *Nelson* v. *Cushing*, 2 Cush. 519; *Assn. for relief of Indigent Females* v. *Beekman*, 21 Barb. 565.

(2)    The demurrer to the joinder of Patrick J. Boyle in any of his said capacities as complainant in this bill must be sustained.

The second question must be answered in the affirmative. The objects of the hospital are similar to those contemplated by the trust. The difference between the language of the charter, as originally passed, and of the will is slight. The hospital is to care for the sick and hurt. The will provides for the sick, hurt, injured, and infirm. The scope of an act establishing a public charity is not to be constrained by construction of its words so as to forbid the action of the corporation in ways germane to those specified in its charter. It is no violent interpretation of language to include infirm persons among sick and hurt, and the decision in any particular case whether the infirmity of an applicant for care amounts to sickness or hurt, may fairly be left to the decision of the officers of the corporation. The law allows the broadest interpretation of the powers of a charitable corporation when the question is as to the inclusion of objects who need its aid.

A corporation may generally execute a trust not expressly forbidden by its charter if the purposes of the trust are germane to the objects stated in the act of incorporation.

In *Vidal* v. *Girard's Executors*, 43 U. S. 126, 189, the Supreme Court of the United States hold that there is no objection in point of law to a corporation taking property upon a trust not strictly within the scope of the expressed purposes of its institution, but collateral to them.

In *Jones* v. *Habersham*, 107 U. S. 174, the same court say:

"A corporation may hold and execute a trust for charitable objects in accord with or tending to promote the purposes of its creation, although such as it might not, by its charter or by general laws, have authority itself to establish or spend its corporate funds for."

In *DeCamp* v. *Dobbins*, 29 N. J. Eq. 36, it is held that only the State can interfere to question the holding of trust funds by a corporation of a value beyond the amount allowed by its charter, citing Perry on Trusts, § 45; *Bogardus* v. *Trinity Church*, 4 Sandf. Ch. 633; *Wade* v. *Am. Col. Soc.*, 7 S. & M. 663. And it is said, further: "This court, which will not suffer a trust to fail for want of a trustee, will uphold a trust for a reasonable time, when necessary, in order to enable the trustee to obtain the requisite authority to take and execute it," citing *Bridges* v. *Pleasants*, 4 Ired. Eq. 26, 30; *Inglis* v. *Trustees of Sailors Snug Harbor*, 3 Pet. 115.

Other cases to the same general purport are cited by the defendant's counsel, *e. g.*, *Phillips Academy* v. *King*, 12 Mass. 546, approved in *Inhabitants of First Parish* v. *Cole*, 3 Pick. 232; *Sohier* v. *St. Paul's Ch.* 12 Metc. 250; *Wetmore* v. *Parker*, 52 N. Y. 450; *Kerr* v. *Dougherty*, 59 How. Pr. 44.

The counsel for the complainant cites no case or authority to the contrary. The reference which he makes to 5 Am. & Eng. Ency. L. (2nd ed. 922,) is directly against his contention. The author of the article says in that place: "While it may be somewhat doubtful whether a corporation could stand seized to a charitable use prior to the statute 43 Eliz., it is now well settled that a corporation may act as trustee, if the trust be not repugnant to or inconsistent with the purposes of its organization."

We conclude, therefore, that the Newport Hospital was amply competent to accept and administer the charitable trust declared in the will of John Alfred Hazard under the provisions of its original charter, without the aid of the amendment.

(3)    The third question is not directly argued by the complainant's counsel, but the inability of the hospital to continue its care of contagious diseases is cited by him as proof that it has wasted the trust funds committed to its care.

It can not be successfully maintained, under the terms of the will, that it is the imperative duty of the trustee to maintain such a ward. The widest reasonable discretion is given to the hospital in the application of the trust fund to the relief of the beneficiaries. It may well appear that the object of the gift, which the testator declares to be "to benefit as many such poor persons as practicable," can be attained most successfully by excluding persons afflicted with contagious diseases, and the trustee must decide whether such is the case at all times while the trust continues. An erroneous decision of such a question would not in any event constitute a breach of trust.

It is of no importance, in this connection, what effect this action of the trustees has had upon the performance by the city of Newport of its duties imposed by Gen. Laws cap. 40, § 13, and cap. 94, §§ 15, 16, and 17. The duty of the city is fixed by law; the discretion of the hospital depends upon the terms of the will.

(4) The allegation of the bill to which the fourth question relates is that the respondent had received contributions from charitable persons for the establishment of free beds in the hospital, and has expended portions of the capital of the Hazard trust fund in making up deficiencies in the income of the free bed fund. It is alleged, further, that such deficiencies were caused by mismanagement of the free bed fund. Obviously the latter inquiry is foreign to the scope of this bill. We are here concerned with the respondent only in its administration of the Hazard trust. The appropriation of some portion of the capital of the Hazard fund to the current expenses of the hospital is the principal ground urged against the conduct of the trustee. It is argued by the complainant's counsel that the will by fair implication requires that the capital of the fund shall be preserved in perpetuity, and that any expenditure out of the fund beyond the income thereof is a breach of trust which invokes the interposition of the court. To this it is replied that there is no express limitation of the power of the trustee to expend the capital in the words of the will; that it is forever to use and apply "the whole residue and remainder of said trust property," as well as "the proceeds, rents, issues,

profits, and income thereof," for the purposes of the trust, and that the object being "to benefit as many such poor persons as practicable and at the same time to provide and secure a permanent source of aid, remedy and relief," the further provision "to which end the employment of said trust funds and property for the general support and maintenance of said hospital is hereby authorized, so far as may be requisite, to uphold it and preserve it and perpetuate the charity hereby created and designed," is a sufficient authority to the trustee to expend part of the capital if, in its opinion, such expenditure is desirable.

We do not find in the provisions of the will either a definite prohibition or a plenary license on this subject. The testator desired that the trust he created should continue indefinitely, and he also hoped that it would be so managed as to do the most possible good. It is very evident that any habitual encroachment upon the principal of the fund would tend to defeat the object of the testator with respect to its perpetuity. But it is also conceivable that in stress of necessity a portion of the capital might be usefully employed even in the defraying of current expenses and the fund again be restored by accumulation of income after the exigency had passed. Here again, in the first instance, the judgment of the trustee must determine its conduct. The answer denies many of the allegations of the bill in this regard, and the determination of the question as applied to the past administration of the trustee must be left until the issues of fact are made up and evidence has been taken upon them. We may say, however, at the present time, that the use of a part of the capital in the erection of buildings for the accommodation of sick persons is, in our opinion, directly in pursuance of the conditions of the trust. If no income in money is derived from the funds which have been paid for the buildings, the use of the buildings takes the place of such income.

As neither the demurrer nor the legal defences set up by the answer are to the whole bill, the questions as to the conduct of the trustee which take the form of issues of fact remain for consideration. If the attorney-general desires to controvert the assertions of the respondent and shall file a replication

within twenty days, evidence may be taken on these issues and the case will proceed; otherwise it will stand for hearing upon bill and answer.

*J. Stacy Brown,* for complainant.

*Darius Baker and Rathbone Gardner,* for respondent.